**Memorandum**



**To**
Kurt G. Calia
Covington & Burling LLP

**From**
Laura Widmer
Bär & Karrer Ltd

**Date**
Zurich, 19 June 2023

**Declaration of Laura Widmer**

### A     Introduction

### I     Preliminary Remarks

1     I have been asked to provide a declaration on legal issues related to questions of jurisdiction and contract interpretation under Swiss law. The statements made herein are made to the best of my knowledge based on the facts provided and the law.

### II     Credentials

2     I have been a partner at Bär & Karrer since 2021 and head its employment department. I have worked at Bär & Karrer since becoming admitted to the Zurich bar in 2008, first as an associate (2008 – 2016) and then as a counsel (2016 – 2020). In 2011, I completed an LL.M. in International Business Law at King's College London, and in 2014, I became a Certified Specialist Swiss Bar Association Employment Law.

3     Bär & Karrer is a leading Swiss law firm with more than 200 lawyers. Its core business is advising our clients on innovative and complex transactions and representing them in litigation, arbitration, and regulatory proceedings. Our clients

| Bär & Karrer Rechtsanwälte | Zürich<br>Bär & Karrer AG<br>Brandschenkestrasse 90<br>CH-8002 Zürich<br>Phone: +41 58 261 50 00<br>Fax: +41 58 261 50 01<br>zuerich@baerkarrer.ch | Genf<br>Bär & Karrer SA<br>12, quai de la Poste<br>CH-1211 Genève 3<br>Phone: +41 58 261 57 00<br>Fax: +41 58 261 57 01<br>geneve@baerkarrer.ch | Lugano<br>Bär & Karrer SA<br>Via Vegezzi 6<br>CH-6901 Lugano<br>Phone: +41 58 261 58 00<br>Fax: +41 58 261 58 01<br>lugano@baerkarrer.ch | Zug<br>Bär & Karrer AG<br>Baarerstrasse 8<br>CH-6302 Zug<br>Phone: +41 58 261 59 00<br>Fax: +41 58 261 59 01<br>zug@baerkarrer.ch | Basel<br>Bär & Karrer AG<br>Lange Gasse 47<br>CH-4052 Basel<br>Phone: +41 58 261 59 50<br>Fax: +41 58 261 59 51<br>basel@baerkarrer.ch | www.baerkarrer.ch |

    range from multinational corporations to private individuals in Switzerland and around the world.

4  My practice focuses on advising Swiss and foreign individuals and entities on various aspects of Swiss employment law, particularly with regard to individual and mass dismissals, transactions, restrictive covenants, reorganizations, and compensation matters. I regularly represent clients in employment disputes before Swiss courts.

5  I am currently ranked in Chambers Europe, Legal 500, IFLR1000, Who's Who Legal and Leaders League.

### III  Assignment and Materials Reviewed

6  I have been asked to provide an explanation of Swiss law and procedure to counsel for Holcim Ltd. and Holcim (US) Inc. in connection with the matter of *Sika Corporation, et al. v. Hoefflin, et al.* pending in the U.S. District Court for the Northern District of Illinois (No. 1:23-cv-01464 (N.D. Ill.)).

7  Specifically, I have been asked to make this Declaration in support of the motion to dismiss pursuant to the doctrine of *forum non conveniens* by Holcim Ltd. and Holcim (US) Inc. I understand that Frank Hoefflin may also rely on my opinions in this Declaration in connection with certain issues addressed in his motion to dismiss.

8  In addition to my extensive professional experience, I have specifically revisited the Swiss laws referenced in my analysis set forth below.  I have also been provided with a copy of the German translation of the complaint (and its Exhibits A and B) of 9 March 2023 ("**Complaint**"), and I have reviewed both the original German and an English translation of the employment agreement between Sika Technology AG and Frank Hoefflin of 25 October 2021 ("**Employment Agreement**") discussed in the Complaint. I am fluent in both German and English, and I perform my professional responsibilities in both languages.

9  I have been asked to advise on two issues. First, I have been asked to address whether Switzerland has jurisdiction over the Defendants and whether Swiss courts recognize the claims asserted by Sika Corporation and Sika Technology Ltd. (together, the "**Plaintiffs**") in the Complaint. Second, I have been asked to opine on matters relating to employment law and non-compete clauses under Swiss law.

10  This declaration is made on the basis of my personal knowledge, experience, and expertise as an attorney who regularly represents clients in Switzerland on employment matters.

## B    Switzerland's Legal System, Jurisdiction, and Procedures

## I    Important Aspects of Swiss Legal System

### 1    Description of Swiss legal system

11    Switzerland is a civil law jurisdiction that incorporates both Germanic and French legal traditions.[1] The organization of the Swiss legal and judicial system reflects its political and federalist structure. Switzerland is comprised of a Confederation of cantons structured in three distinct political levels: the Confederation (the federal state), the cantons (the states), and the municipalities (the local authorities).

12    Swiss laws are hierarchical as federal laws take precedence over cantonal constitutions and laws, constitutional rules prevail over ordinary statutes, and statutes take priority over regulations promulgated by government or administrative authorities.[2]

13    Civil procedure in Switzerland is governed by several federal and cantonal statutes and international treaties. The most important statute in this context is the Swiss Civil Procedure Code ("**CPC**"), which provides for a unified set of rules for the civil proceedings before the cantonal courts. Proceedings before the Swiss Federal Supreme Court (as the court of last instance which acts as the court of appeal against decisions of the upper cantonal courts) are governed by a separate procedural code, i.e., the Federal Supreme Court Act ("**FSCA**"). For the determination of jurisdiction in cases with an international component, the Swiss Private International Law Act ("**PILA**") and/or international treaties (in particular the Lugano Convention ("**LC**")) also apply.

14    In Switzerland, court proceedings must in principle be preceded by a conciliation hearing before a conciliation authority aimed at reconciling the parties in an informal manner.[3] In order to initiate proceedings, a plaintiff must submit a request for conciliation to the local conciliation authority.[4] In the event that no agreement is reached during the conciliation hearing, the conciliation authority will issue an authorization to sue, which will allow the plaintiff to file a lawsuit before the competent court of first instance within three months after receipt.[5]

15    As none of the statutory exceptions apply, if the Plaintiffs were to jointly pursue the present case in Switzerland, it would have to be initiated by submitting a request for conciliation to the local conciliation authority. If no agreement were reached, the conciliation authority would issue an authorization to sue to the Plaintiffs.

---

[1]  BRUNSCHWEILER/GIROUD/KUNZ, International Civil Procedure: Switzerland, in: Campbell/Campbell (ed.), International Civil Procedure, 6th Edition., 2017, p. SWI-1.
[2]  idim.
[3]  Cf. art. 197 CPC.
[4]  Cf. art. 202 CPC.
[5]  Cf. art. 209 CPC.

## 2   The Swiss courts' jurisdiction over Defendants Frank Hoefflin and Holcim Ltd.

16   Where there are several plaintiffs and/or several defendants, a Swiss court will examine its jurisdiction independently for each party to the dispute.

17   I understand that Sika Corporation is domiciled in New Jersey, that Sika Technology Ltd. is domiciled in Switzerland. I also understand that Frank Hoefflin resided in Baden, Switzerland at the time he entered into the Employment Agreement with Sika Technology AG, during his employment at Sika Technology AG (which is also domiciled in Switzerland), and at the time that his alleged conduct giving rise to this lawsuit occurred. I further understand that Holcim (US) Inc. is domiciled in Illinois, and that Holcim Ltd. is domiciled in Switzerland.

18   In the case at hand, jurisdiction is governed by the PILA, except with regard to the claims asserted by Sika Technology Ltd. against Holcim Ltd., where, due to the fact that both parties have their registered seat in Switzerland, jurisdiction would be governed by the CPC. This being said, the two statutes contain largely identical provisions regarding jurisdiction in contractual disputes in general and specifically for employment contracts.

19   With regard to the claims in relation to the alleged breach of the Employment Agreement against Frank Hoefflin, art. 115 (1) PILA[6] provides that the Swiss courts at the defendant's domicile or at the place where the employee usually performs his work have jurisdiction to hear actions relating to the employment contract. art. 34 (1) CPC[7] provides for an analogous provision for domestic disputes. The Employment Agreement reproduces the corresponding provision from the CPC in its clause 9 (on that point, cf. below paras. 53 *et seq.*).

20   Although the wording of the provision of art. 115 (1) PILA only speaks of the place where the employee usually *performs* his work, it seems reasonable to me to understand this provision in the same way as the Swiss Federal Supreme Court does with the equivalent provision of art. 34 (1) CPC[8] and as is explicitly provided for in art. 19 LC[9], namely that it also provides for a ground of jurisdiction at the place where the employee usually *performed* his work under the terms of the applicable employment agreement.

21   Accordingly, in the present case, the courts in Zurich (Canton of Zurich), as the place where Frank Hoefflin usually performed his work for Sika Technology AG, would have jurisdiction to hear claims relating to the alleged breach of the Employment Agreement against Frank Hoefflin.

---

[6]   This provision reads as follows: "*The Swiss courts at the defendant's domicile or at the place where the employee habitually performs their work have jurisdiction to hear actions relating to an employment contract.*"

[7]   This provision reads as follows: "*The court at the domicile or registered office of the defendant or where the employee normally carries out his or her work has jurisdiction to decide actions relating to employment law.*"

[8]   Decision of the Federal Tribunal ("**DTF**") 4A_236/2016 of 23 August 2016.

[9]   Cf. art. 19 (2) (a) LC, which reads as follows: "*An employer domiciled in a State bound by this Convention may be sued in another State bound by this Convention in the courts for the place where the employee habitually carries out his work or in the courts for the last place where he did so*".

22  Misappropriation of confidential information, including trade secrets, of which the employee has become aware during his employment constitutes a breach of the employment contract under Swiss law and may also constitute a violation of the Unfair Competition Act ("**UCA**") (cf. below para. 38 *et seq.*). If such claims are asserted under the Employment Agreement, jurisdiction will again lie with the courts pursuant to art. 115 (1) PILA, i.e. the courts in Zurich (Canton of Zurich) will have jurisdiction to hear the claims (cf. above para. 20 *et seq.*). If the action is based on an infringement of the UCA, jurisdiction would be governed by art. 129 (1) PILA[10], which provides for a ground of jurisdiction at the defendant's domicile as well as at the place where the tortious act or the result of it occurred. In view of the fact that Frank Hoefflin resided in Baden (Canton of Aargau) and was working in Zurich (Canton of Zurich) during the time that his alleged conduct giving rise to this lawsuit occurred, it appears that the alleged tortious acts were also committed in Switzerland, namely either in Baden (at the place where he was domiciled) or in Zurich (at the place where he was working for Sika Technology AG). Accordingly, either the courts in Baden (Canton of Aargau) or Zurich (Canton of Zurich) would be competent to hear such claims.

23  As for the claims against Holcim Ltd., I understand that these are tortious in nature. Thus, the jurisdiction would again be governed by art. 129 (1) PILA and art. 36 CPC[11]. Based on these provisions, jurisdiction will in any case be given in Zug (Canton of Zug), which is the place of the registered office of Holcim Ltd.

24  Thus, in the present case, jurisdiction would exist in Switzerland both for the claims brought against Frank Hoefflin and against Holcim Ltd.

25  Furthermore, it would also be possible to bring the claims against Frank Hoefflin and Holcim Ltd. before one and the same court. art. 8a (1) PILA and art. 15 (1) CPC provide that in cases where the action is directed against several defendants in respect of which there is a jurisdiction in Switzerland, a court that has jurisdiction over one defendant shall have jurisdiction over all defendants. Moreover, art. 8a (2) PILA and art. 15 (2) CPC provide that where two or more claims that are factually connected are raised against one and the same defendant, each court that has jurisdiction over any one of the actions has jurisdiction over all of them. These principles are subject to the condition that it cannot be used as a basis to deprive an employee of the statutorily stipulated grounds of jurisdiction pursuant to art. 34 CPC, i.e. the employee cannot be forced by means of joinder in front of a court other than the ones provided for in art. 34 CPC.[12] In the present case, this means that the actions against Frank Hoefflin and Holcim Ltd. could be jointly filed in Zurich (i.e., at Frank Hoefflin's place of work at Sika Technology AG per the Employment Agreement).

---

[10] This provision reads as follows: "*The Swiss courts at the domicile or, in the absence of a domicile, at the habitual residence of the defendant have jurisdiction to hear actions in tort. Moreover, the Swiss courts at the place where the act or the result occurred and, for actions pertaining to the operation of an establishment in Switzerland, the courts at the place of the establishment have jurisdiction.*"

[11] This provision reads as follows: "*The court at the domicile or registered office of the aggrieved person or the defendant, or where the act occurred or had its effect has jurisdiction over actions in tort.*"

[12] KAISER JOB, in: Spühler/Tenchio/Infanger (eds.), Basler Kommentar Schweizerische Zivilprozessordnung (ZPO), 4th ed., Basel 2021, art. 35 para. 11.

### 3 The Swiss courts' jurisdiction over Defendant Holcim (US) Inc.

26  As mentioned above in para. 22, art. 129 PILA provides, *inter alia*, for jurisdiction in Switzerland at the place of the tortious event for actions in tort, i.e., at the place where the tortious act or the result of it occurred. Accordingly, in order to establish jurisdiction in Switzerland against Holcim (US) Inc. on the basis of art. 129 (1) PILA, the alleged tortious act or the result of it must have occurred in Switzerland. Based on my understanding of the allegations of the Complaint, it appears that Plaintiffs have alleged a tortious act by Holcim (US) Inc. (alleged interference with Frank Hoefflin's employment agreement with Sika Technology AG) that at least the result of which occurred in Switzerland, as the contracting parties were located in Switzerland and Frank Hoefflin was performing his work pursuant to the Employment Agreement with Sika Technology AG in Switzerland.

27  Even if there were no other grounds of jurisdiction, it would still be possible for Holcim (US) Inc., as well as Frank Hoefflin, to consent to the jurisdiction of the Swiss courts by way of entering an appearance. As Holcim Ltd. and co-plaintiff Sika Technology Ltd. are domiciled in Switzerland, the entering of an appearance by Holcim (US) Inc. and Frank Hoefflin would be governed by art. 24 LC.[13] Entering an appearance is understood to mean asserting any defense directly aimed at the dismissal of a claim without having previously, or at least simultaneously, raised a plea of lack of jurisdiction.[14] Pursuant to art. 24 LC,[15] entering an appearance is generally appropriate in every case, except for five specific cases enumerated in art. 22 LC. None of those five specific enumerated cases apply to the present case.

28  If a party has entered an appearance pursuant to art. 24 LC, the court at issue is obliged to hear the case (so-called obligation to accept). In other words, the court at issue is not entitled to undertake a *forum non conveniens* assessment.[16]

### 4 How cases are adjudicated in Switzerland

29  As explained above (para. 14), Swiss law provides that a conciliation hearing must first be held. The case would go to court if no settlement is reached during the conciliation hearing.

30  With respect to the actual court proceedings, federal law requires the cantons to provide for a two-instance judicial system: a first instance and a second appellate instance. In certain exceptional cases, only one cantonal instance is provided for. If Frank Hoefflin, Holcim Ltd., and Holcim (US) Inc. were to be sued jointly in Switzerland before the same court in the same set of proceedings, none of these

---

[13]  KILLIAS, in: Dasser/Oberhammer (eds.), Lugano-Übereinkommen (LugÜ), 3rd ed., Bern 2021, art. 24 para. 9 with further references.

[14]  DTF 4A_446/2018, 4A_448/2018 of 21 May 2019, consid. 6.1.2; BERGER, in: Oetiker/Weibel (ed.), Basler Kommentar Lugano Übereinkommen, 2nd ed., Basel 2016, art. 24 para. 31.

[15]  This provision reads as follows: "*Apart from jurisdiction derived from other provisions of this Convention, a court of a State bound by this Convention before which a defendant enters an appearance shall have jurisdiction. This rule shall not apply where appearance was entered to contest the jurisdiction, or where another court has exclusive jurisdiction by virtue of Article 22.*"

[16]  BERGER, op. cit., para. 41.

      exceptions would apply, meaning that an action would first have to be brought before the ordinary court of first instance.

31    The proceedings before the court of first instance differ somewhat depending on the amount in dispute and the subject matter of the claim. In principle, however, both parties have the opportunity to present their case on two occasions without any restrictions.[17] In larger cases, this is often done in the form of two written submissions each (i.e., Statement of Claim, Statement of Defense, Reply and Rejoinder). This is usually followed by a hearing, which the parties can, however, jointly dispense of in advance.[18] After the hearing and the taking of evidence, if any, the court proceeds to render its judgment.

32    If the amount in dispute exceeds CHF 10'000, an ordinary appeal (in German: "*Berufung*") may be lodged against the decision of the court of first instance.[19] The time limit for lodging an appeal is in principle 30 days and both an incorrect application of the law and an incorrect determination of the facts can be objected to.

33    If the threshold value of CHF 10'000 is not reached, a complaint (in German: "*Beschwerde*") may be lodged, in which case, however, the grounds for appeal are limited to the extent that only obvious errors in the determination of the facts can be appealed.[20] Furthermore, the time limit for lodging a complaint in principle is 30 days.[21]

34    The decision of the cantonal appellate court is again subject to appeal to the Swiss Federal Supreme Court (in German: "*Beschwerde in Zivilsachen*"), provided the amount in dispute exceeds a certain threshold. In employment law cases such as the present case, the amount in dispute must exceed CHF 15'000.[22] The time limit for logging an appeal is in principle again 30 days.[23] Grounds for appeal are limited, in particular with regard to the incorrect determination of the facts.[24]

---

[17] Cf. art. 229 CPC.
[18] Cf. art. 233 CPC.
[19] Cf. art. 308 CPC.
[20] Cf. art. 320 CPC.
[21] Cf. art. 321 CPC.
[22] Cf. art. 74 (1) FSCA. In exceptional cases, a complaint may be admissible even if this threshold is not reached; cf. art. 74 (2) FSCA.
[23] Cf. art. 100 FSCA.
[24] Cf. art. 95 *et seq.* FSCA.

## II  Swiss Law Provides Adequate Remedies for All of Plaintiffs' Claims in the Complaint

### 1  Description of the Swiss Civil Code

#### 1.1  Breach of contract (breach of non-compete clause and breach of confidentiality provisions)

35   Counts III and IV of the Complaint allege that Frank Hoefflin breached the Employment Agreement, specifically the Non-Compete Clause and Non-Disclosure Clause, respectively. The legal consequences arising from a breach of contract are generally governed by art. 97 (1) Swiss Code of Obligations ("**CO**").[25] The debtor must pay damages to the creditor unless the debtor can prove that they are not at fault, the latter being presumed by law. The general conditions of claims for breach of contract are:

   (i)   the obligation arising from a specific legal obligation cannot be fulfilled or is not fulfilled properly, meaning there is a breach of duty;

   (ii)  the creditor of the obligation has suffered damage;

   (iii) there must be an adequate causal connection between the breach of duty and the occurrence of damage;

   (iv)  the debtor cannot exonerate himself from the presumption of fault.

36   In addition to these general principles, art. 321e CO[26] applies to employee liability: The employee is liable for any damage the employee causes to the employer whether willfully or by negligence. This provision constitutes a specific provision to the general rules on contractual liability according to art. 97 *et seq.* CO. Art. 97 *et seq.* CO therefore apply subsidiarily.[27]

37   Anyone who has a substantive claim under civil law (irrespective of the basis of the claim) and requires precautionary legal protection for it may request such protection by means of interim measures (art. 261 *et seq.* CPC). The requesting party must establish the merits of its substantive main claim.[28] The claim for injunctive

---

[25] This provision reads as follows: "*An obligor who fails to discharge an obligation at all or as required must make amends for the resulting damage unless he can prove that he was not at fault.*"

[26] This provision reads as follows: "*(1) The employee is liable for any damage he causes to the employer whether wilfully or by negligence. (2) The extent of the duty of care owed by the employee is determined by the individual employment contract, taking due account of the occupational risk, level of training and technical knowledge associated with the work as well as the employee's aptitudes and skills of which the employer was or should have been aware.*"

[27] Art. 97 *et seq.* CO therefore apply insofar as nothing to the contrary arises for liability from the special provisions of employment contract law. STAEHELIN, in: Gauch/Schmid (eds.), Zürcher Kommentar zum Schweizerischen Zivilrecht, Obligationenrecht, V/2c, 4rd ed., Basel 2006, art. 321e para. 1.

[28] SPRECHER, in: Spühler/Tenchio/Infanger (eds.), Basler Kommentar Schweizerische Zivilprozessordnung (ZPO), 3th ed., Basel 2017, art. 261 para. 15.

relief can be any subjective right under civil law, i.e., a positive or negative performance (doing, omission, acquiescence) or a modification of a legal relationship or a statement of fact.[29]

## 1.2 Trade secret misappropriation

38  Counts I and II of the Complaint allege that Frank Hoefflin violated the Illinois and US federal trade secret laws, respectively. Under Swiss law, the employee's liability under this heading would be governed by art. 321e CO and, subsidiarily, by art. 97 *et seq.* CO. In addition, art. 6 UCA[30] could also constitute a basis for liability.

39  According to art. 321a (4) CO, for the duration of the employment the employee must not exploit or reveal confidential information obtained while in the employer's service, such as manufacturing or trade secrets; the employee remains bound by such duty of confidentiality even after the end of the employment to the extent required to safeguard the employer's legitimate interests. A breach of this duty (of loyalty) may result in a liability for damages pursuant to art. 321e CO.

40  Art. 321a CO is dispositive law. The employee's obligations arising from it can, but need not, be contractually specified, for example with a post-contractual non-compete and a contractual penalty.

41  Anyone who exploits or discloses to others manufacturing or trade secrets that they have discovered or otherwise become aware of is also in violation of art. 6 UCA. A person acts unfairly in particular if it exploits or discloses to others manufacturing or trade secrets that it has found out or otherwise unlawfully obtained.

42  With regards to available remedies, art. 9 of the UCA states that any person who is threatened with or sustains damage to their customer base, their credit or professional reputation, their business operations or otherwise to their economic interests as a result of unfair competition may request the court i) to prohibit imminent damage, ii) to redress existing damage and/or iii) to determine the illegality of the damage if this is continuing to have a disruptive effect. They may in particular request that notice of any correction or the judgment be given to third parties or be published and may also bring an action pursuant to the Code of Obligations for damages and satisfaction and for delivery of profits. The law therefore provides for both negatory claims (claims for injunctive relief, removal and declaratory relief as well as publication claims) and compensatory claims.[31] The penal provisions of the UCA then provide that any person who willfully competes unfairly in terms of articles 3, 4, 5 or 6 UCA shall on complaint be liable to a custodial sentence not exceeding three years or a monetary penalty (art. 23 (1) UCA).

---

[29] idim.

[30] SPRECHER, in: Spühler/Tenchio/Infanger (eds.), Basler Kommentar Schweizerische Zivilprozessordnung (ZPO), 3th ed., Basel 2017, art. 261 para. 15.

[31] DOMEJ, in: Heizmann/Loacker (eds.), Bundesgesetz über den unlauteren Wettbewerb (UWG) Kommentar, 1st ed., 2018, art. 9 para. 8.

43  With regards to injunctive relief, reference can be made to the above statements (para. 37).

### 1.3 Tortious interference with contractual relations

44  Count V of the Complaint alleges that "Holcim" induced Frank Hoefflin to breach the Employment Agreement by joining "Holcim" and disclosing trade secrets and confidential information. Plaintiffs' Complaint refers to Holcim Ltd. and Holcim (US) Inc. collectively as "Holcim" without distinguishing the alleged conduct of either entity. The Plaintiffs further contend that Holcim's "poaching strategy" resulted in Holcim's hiring of "at least 15 other former Sika employees since January 2021."

45  The "*tortious interference with contractual relations*" claim against Holcim Ltd. and Holcim (US) Inc. may be brought under Swiss law as a claim of unfair competition pursuant to art. 4 UCA[32].

46  The UCA prohibits the unfair enticement of employees.[33] According to the principle set forth in art. 2 UCA, any conduct or business practice that is deceptive and/or otherwise contrary to the principle of good faith and affects the relationship between competitors or between suppliers and customers is unfair and unlawful. Against this background, solicitation with the inducement of breach of contract is considered fundamentally unlawful.[34]

47  According to art. 4 lit. c UCA, a person acts unfairly if they induce employees, agents or other auxiliary personnel to betray or find out manufacturing or trade secrets belonging to their employer or client. The unfairness of art. 4 lit. c UCA consists in the fact that an interferer induces employees, agents and other auxiliary persons of an owner of a secret to disclose manufacturing or trade secrets out of self-interest. A contractual relationship must exist between the person induced and the owner of the secret. Because the induced persons are typically contractually obligated to keep manufacturing and trade secrets secret, inducement to betray a secret is conceptually a special form of inducement to breach a contract.[35] If a poached employee discloses manufacturing or trade secrets of his former employer upon inducement of their new employer, the elements of art. 4 lit. c UCA may also apply in connection with the poaching of personnel.[36]

48  If certain elements of art. 4 lit. c UCA do not apply to the case at issue, the general clause of art. 2 UCA may be invoked to authorize the unfair competition claim. For example, 2 UCA may be invoked to authorize a claim of unfair competition for the

---

[32] This provision reads as follows: "*A person acts unfairly in particular if they: (a) induce a customer to breach a contract in order to enter into a contract with that customer; (b) [Repealed] (c) induce employees, agents or other auxiliary personnel to betray or find out manufacturing or trade secrets belonging to their employer or client; (d) induce a consumer who has entered into a consumer credit agreement to cancel the agreement in order to enter into an agreement with that consume.*"

[33] KÄLIN, Rechtliche Minenfelder beim Active Sourcing, HR Today, 2015, cf. https://www.hrtoday.ch/de/article/rechtliche-minenfelder-beim-active-sourcing (last visited: 31 May 2023).

[34] idim.

[35] FISCHER, in: Heizmann/Loacker (eds.), Bundesgesetz über den unlauteren Wettbewerb (UWG) Kommentar, 1st ed., 2018, art. 4 para. 72.

[36] Fischer, op. cit., para. 80.

inducement of a *former* employee to betray secrets or to spy on secrets after termination of their employment where the former employee is subject to a post-contractual obligation to maintain secrecy after termination of the employment.[37] For the available remedies in case of a violation of art. 2 UCA, reference can be made to the considerations in paragraph 42, with the exception of the penal provisions of art. 23 UCA, which do not apply in the case of a violation of art. 2 UCA.

### 1.4 Switzerland's interest in this dispute

#### 1.4.1 Switzerland has a general interest in adjudicating cases such as the one at hand

49   A *forum non conveniens* assessment, as is known in common law jurisdictions, is alien to Swiss law.[38] Under Swiss law, the possibility of a court declining jurisdiction is only recognized within narrow limits, namely under the regime of art. 5 *et seq.* PILA, which would not apply in the present case.[39] However, even under said regime, a Swiss court may not decline jurisdiction, if either:[40]

   (i)   a party is domiciled or has its habitual residence or an establishment in the canton of the seized court; or if

   (ii)  Swiss law is applicable to the dispute.

50   It can be deduced from this that, according to the Swiss legislator, there is a general interest in having Swiss courts adjudicate cases involving persons domiciled in Switzerland or those in which Swiss law is applicable.

#### 1.4.2 Swiss courts can resolve disputes such as the one at hand in a reasonable time frame

51   The duration of proceedings will naturally depend on the particular circumstances of the case. Typically, the average duration of civil disputes in commercial matters such as the case at hand is between one and two years for the proceedings before the court of first instance. Appeal proceedings are considerably faster and usually take not more than half a year.[41]

#### 1.4.3 Swiss courts can compel live testimony from witnesses for both parties

52   Swiss courts can compel live testimony from witnesses who reside in Switzerland, including employees of Holcim Ltd. and Sika Technology Ltd. (and Sika Technology

---

[37]   FISCHER, op. cit., para. 89.
[38]   MÜLLER-CHEN, in: Müller-Chen/Widmer Lüchinger (eds.), Zürcher Kommentar zum IPRG, 3rd ed., Zurich 2018, Vorbem. zu art. 2–10 para. 50.
[39]   An entering an appearance would fall in the scope of application of art. 24 LC, cf. above para. 28.
[40]   Cf. art. 5 para. 3 PILA.
[41]   The Swiss Federal Supreme Court indicates the average duration of appeal proceedings to be on average between 4 and 5 months. Cf. https://www.bger.ch/index/federal/federal-inherit-template/federal-faq/federal-faq-18.htm (last visited: 31 May 2023).

AG, which is the actual party to the Employment Agreement). Witnesses who are summoned must appear in court in person.[42]

## C  Sika-Hoefflin Employment Agreement and Non-Compete Clause

### I  Forum Selection Clause

53  As explained above in para. 19, Clause 9 of the Employment Agreement contains a transcription of art. 34 CPC setting out the jurisdictional rules for employment disputes, including a statement that the court "at the defendant's domicile or registered office or at the place where the Employee habitually performs the work shall have jurisdiction to hear actions arising from this agreement."

54  Such a clause is frequently found in Swiss employment contracts, the reason being that under Swiss law it is not permissible for an employee to waive the statutory jurisdictions pursuant to art. 34 CPC in advance by means of a jurisdiction agreement or by entering an appearance.[43]

### II  Non-Compete Clause

#### 1  Prerequisites for Enforceable Post-Contractual Non-Compete Agreement

55  The statutory prohibition of competition only applies during the employment. If a post-contractual non-compete undertaking is to apply between the parties, this requires a specific agreement. A post-contractual non-compete obligation is only effective if the following cumulative conditions are met: (i) the employee must be capable of acting; (ii) the non-compete clause must be in writing; (iii) the prohibition must be sufficiently clearly defined, and (iv) the employee must have had insight into the customer base and/or into the employer's manufacturing or business secrets during his employment.[44]

56  The third condition refers in particular to a clear limitation in terms of time, geography and subject matter (art. 340a CO).

57  On 25 October 2021, Sika Technology AG and Frank Hoefflin agreed in a written "*Non-Compete Clause*," which supplements the Employment Agreement, on a post-contractual non-compete undertaking as follows:

> *English translation:*
>
> 1. "The Employee is obliged to refrain from any competition with the Employer or other companies belonging to the Sika Group as long

---

[42] HASENBÖHLER, Das Beweisrecht der ZPO, Band 2: Die Beweismittel, para. 4.103.
[43] Art. 35 (1) lit. d CPC.
[44] PORTMANN/RUDOLPH in: Widmer Lüchinger/Oser (eds.), Basler Kommentar Obligationenrecht I, 7th ed., Basel 2020, art. 340 para. 2.

> *as the employment contract is in force and for two years after termination of the employment relationship. In particular, he shall […]*
>
> *In return for the obligation not to compete with the Employer, the Employee receives compensation of six months' wages evenly distributed over the period of two years after termination of the employment relationship. The calculation is based on the last regular monthly basic salary (gross) excluding bonus and other voluntary benefits. The Employer may waive compliance with the non-compete clause; in this case, said Employer shall not be liable to pay any compensation.*
>
> 2. *The non-compete clause covers the territory in which the Employee has been directly or indirectly active in the last 12 months of the employment relationship, i.e. Switzerland, the member states of the EU and the EEA.*
>
> 3. *[…]*
>
> 4. *[…]"*

## 2    Extinction of Post-Contractual Non-Compete Agreement

58    A post-contractual non-compete undertaking automatically is extinguished if the employee has terminated the employment for cause attributable to the employer (art. 340c (2) CO). It is sufficient to have a reason which, from a reasonable point of view, may constitute grounds for termination, whereby the justified reason need not be an actual breach of contract.[45] In particular, significant wage reductions or a tense work climate and unilateral changes in territory and customer assignments or a transfer to a lesser position at a different work location qualified as sufficient cause.[46]

59    I understand that after many years of service to Sika Technology AG, Frank Hoefflin was demoted in fall/winter 2021 (cf. new employment agreement dated 25 October 2021, start of the new employment on 1 November 2021). With this, his role as CTO was taken away from him – without observing the applicable notice period of twelve months. Such fact alone might be regarded as giving cause for Frank Hoefflin to terminate the employment on the grounds that Sika Technology AG was in breach of its duty of care towards him.[47]

60    Significant reductions in wages, which I understand occurred here, may also constitute cause for termination of the employment.[48] I understand that Frank Hoefflin resigned from Sika Technology AG in May 2022.

---

[45]    DTF 130 III 353 consid. 2.2.1; STREIFF/VON KAENEL/RUDOLPH, Arbeitsvertrag Praxiskommentar, 7th ed., Zurich/Basel/Geneva 2012, art. 340c para. 3.
[46]    STREIFF/VON KAENEL/RUDOLPH, op. cit., para. 5.
[47]    DTF 143 III 290.
[48]    STREIFF/VON KAENEL/RUDOLPH, op. cit., art. 340c para. 5.

61   Accordingly, the agreed post-contractual non-compete undertaking may have ceased to exist if the present reasons are qualified as cause attributable to Sika Technology AG and Frank Hoefflin therefore resigned.

### 3   Art. 82 CO / Disruption of Performance

62   Even if it is assumed that the non-compete undertaking did not extinguish, Plaintiffs cannot avail themselves of the non-compete clause.

63   Non-compete clauses (in employment contracts) are widespread in Switzerland.[49] Employer and employee can agree that the employer pays the employee a compensation for the duration of a post-contractual non-compete undertaking.

64   Under the Employment Agreement, in return for the obligation not to compete with Sika Technology AG, Frank Hoefflin is required to receive compensation in the equivalent of six months' wages evenly distributed over the period of two years after termination of the employment. It was agreed that Sika Technology AG may waive compliance with the post-contractual non-compete undertaking, in which case Sika Technology AG shall not be liable to pay any compensation.

65   With the agreement on this *quid pro quo*, the otherwise unilateral non-competition clause becomes a bilateral contract.[50] According to art. 82 CO[51], a party to a bilateral contract may not demand performance until the party has discharged or offered to discharge their own obligation, unless the terms or nature of the contract allow them to do so at a later date.

66   I understand that Plaintiffs did not allege that Frank Hoefflin was ever paid the compensation owed to him nor offered the payment in exchange for the non-compete restrictions, which means that (in accordance with art. 82 CO) Frank Hoefflin cannot be requested to comply with the post-contractual non-compete clause. Furthermore, the non-payment can be understood in good faith as a waiver of the non-compete agreement.

### 4   Geographic limitations

67   Notwithstanding the above, any competition by Frank Hoefflin through his current job in the USA would not be covered by the non-compete undertakings. The Employment Agreement covers "*the territory in which the Employee has been directly or indirectly active in the last 12 months of the employment relationship, i.e. Switzerland, the member states of the EU and the EEA*." The geographical scope seems clearly defined and does not prohibit any activity in the US, which I understand Frank Hoefflin was not active in during the relevant time period.

---

[49]  KRIEGERS-TEJURA, Formulieren von nachvertraglichen Konkurrenzverboten – Voraussetzungen und Folgen, personalSCHWEIZ 11/2018, p. 10; RUDOLPH, Fokus Arbeitsrecht: Sorgenkind Konkurrenzverbot, TREX 2/10, 2010, p. 1.
[50]  STREIFF/VON KAENEL/RUDOLPH, op. cit., art. 340a para 6.
[51]  This provision reads as follows: "*A party to a bilateral contract may not demand performance until he has discharged or offered to discharge his own obligation, unless the terms or nature of the contract allow him to do so at a later date.*"

68   But even if Frank Hoefflin worked in the US during his employment at Sika Technology AG, the wording "i.e." indicates that the US shall not be covered, because the "i.e." seems to limit the geographical scope after the general statement and only mentions Switzerland, the member states of the EU and the EEA. If the parties had not intended such restriction, they would likely have used "e.g." instead of "i.e." in order to list Switzerland, the member states of the EU and the EEA only as examples. In this regard it should also be noted that Swiss courts tend to interpret non-compete agreements restrictively and ambiguous wordings about its scope are usually interpreted at the drafting party's, i.e., the employer's, disadvantage.[52] This interpretation also leads to the result that an activity in the USA is not geographically covered by the post-contractual non-compete undertaking.

\* \* \* \* \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 19, 2023

_____
Laura Widmer

---

[52] DTF 92 II 24; PORTMANN/RUDOLPH, op. cit., art. 340a para. 2.